## The American Fire Insurance Company,
### v.
## Brighton Cotton Manufacturing Company.

*Fire Insurance—Finding of Court—Conflict of Evidence—Occupancy of Premises—Stoppage of Machinery for Repairs and Alterations—Practice.*

1. The finding of the trial Judge, sitting in the place of a jury, must be taken by this court to be conclusive of questions of fact as to which the evidence is conflicting.

2. In an action on a policy of fire insurance, it is *held:* That the building in question was at no time within the period covered by the policy vacant or unoccupied; that the temporary stoppage or suspension of the operation of the factory for the purpose of making repairs and alterations was within the privilege granted by the policy; and that the judgment for the plaintiff is supported by the evidence.

[Opinion filed December 14, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Rollin S. Williamson, Judge, presiding.

This was an action by appellee against the insurance company, appellant, upon a policy of insurance issued January 4, 1885, whereby the latter agreed to insure the former for the period of one year against damages or loss by fire, in amount not exceeding $3,000, the policy covering the four-story brick cotton mill of the plaintiff, situated at Brighton Park, County of Cook, and State of Illinois, together with the machinery and fixtures therein contained, the declaration setting out the policy in words and figures, and averring the destruction of the building, machinery and fixtures by a fire occurring July 16, 1885, during the life of said policy. There was a trial, under proper pleadings, by the court without a jury; a finding of the issues for the plaintiff and assessing its damages at $2,692.82; upon which the court, overruling the defendant's motion for a new trial, gave judgment, and the latter brings the case here by appeal.

The provisions and conditions of the policy, so far as material to the questions involved, are as follows:

" Other insurance permitted without notice, and permission granted to set up and operate machinery, and to make such repairs and alterations as may be necessary to keep the premises in good order during the term of this policy, without prejudice thereto."

(1) " Or if, during the existence of this policy or any renewal thereof, the risk shall be increased by any means whatever, with the knowledge of the assured, and the assured shall neglect to notify the company thereof and have the same endorsed hereon, paying therefor such additional premium as shall be demanded; (2) or shall allow the building to become vacant and unoccupied; * * * (3) or, if it be a manufacturing establishment, running in whole or in part, over or extra time, or running at night, or if it shall cease to be operated, without special agreement endorsed hereon, all insurance by this policy shall thereupon cease."

Upon the trial, evidence was given tending to prove that the plaintiff was the owner of the factory and property in question, was in possession and was operating the same at the time said policy was issued, and so continued until May 1, 1885, when the plaintiff leased the entire premises to W. S. Baker and Thomas Kelly for the term of one year, at a rental expressed in said lease; that said Baker & Kelly immediately entered into possession of said premises under said lease for the purpose of operating said factory; that the fact of said leasing was promptly made known to the defendant, and the latter duly assented thereto, and manifested its assent thereto by an indorsement in writing on the back of said policy; that Baker & Kelly continued to operate said factory with profit to themselves, until about July 8, 1885, when, on account of difficulty just at that time in obtaining a desirable quality of cotton at suitable prices in the usual cotton markets, and for the purpose of making needed repairs as to the interior of said factory and its machinery, they decided upon a temporary suspension of the operation of said factory until about the first of the next succeeding month of August; that in pursuance of said deter-

American Fire Ins. Co. v. Brighton Cotton Mfg. Co.

mination, they, on said July 8, 1885, laid off their engineer, fireman, and most of their employes engaged in operating the spinning and batting machinery, but retained still in their employment a portion of the hands engaged in the dyeing department, and some connected with the packing room, for the purpose of preparing goods for the markets; that all, or nearly all of said employes so laid off were notified at the time that their services were dispensed with for the time being, but that the factory would soon be started again and that they would be notified when their services would be wanted; that arrangements were made on the contemplation of the part of Baker & Kelly for making the necessary repairs of the interior of the building and machinery, and the work went on in the building, under a sufficient number of employes, of preparing for market manufactured goods then on hand, so that such preparation was nearly completed by July 16, 1885, when the fire occurred; that between the time of such suspension and said fire, Baker & Kelly purchased about 100 tons of coal for use in the factory and had it stored therein; that they had there stock and materials for manufacture of the value of some $7,000; that they were active in contracting for the sale of the manufactured goods to be delivered the next succeeding September; that they had a considerable sum of money in the office of the factory at the time of the fire, which had been provided for the payment of the wages of the then employes, who comprised from five to seven persons engaged, and being then all working hours down from the time of said suspension, including one of the proprietors and watchmen, to the time of such fire.

Upon the question whether such suspension increased the risk, the evidence was conflicting; but no evidence was offered tending to prove that it was with the knowledge of plaintiff, or any neglect on the part of the latter to notify the defendant thereof.

The defense relied upon by the defendant at the trial, and in this court, was and is that the policy in suit became void for a violation of each of the several conditions aforesaid.

Mr. E. H. Gary, for appellant.

Messrs. EDWARD W. RUSSELL and D. J. SCHUYLER, for appellee.

McALLISTER, J.   The leasing of the premises in question by the plaintiff below, to Baker & Kelly, after the policy in suit was issued, was expressly assented to by the defendant. No question, therefore, arises from that circumstance affecting the validity of the policy.

But counsel for the defendant contend as the sole ground of error that the stopping by Baker & Kelly of the operation of the factory from the 8th to the 16th day of July, 1885, although done for the purpose and in the manner as shown by the evidence, constituted a breach of each and all of three special conditions of the policy, and that by its express terms such breach rendered the policy void.   So that the judgment below was against the law and the evidence, and should for that reason be reversed.

The first of those conditions is to the effect that if the risk should be increased by any means whatever with the knowledge of the assured, and the latter should neglect to notify the company thereof and have the same indorsed upon the policy, paying therefor such additional premium as should be demanded, the policy should be void.

That condition and the other two are to be taken and construed in connection with the following provision of the policy: "Other insurance permitted without notice, and permission granted to set up and operate machinery and to make such repairs and alterations as may be necessary to keep the premises in good order during the term of this policy without prejudice thereto."

The exercise of the privilege thus given involved the necessity, in a greater or less degree, depending upon circumstances, of a temporary stoppage of the operation of the factory. Such stoppage was therefore authorized by the policy, which, it in terms provided, should be without prejudice thereto.   Now the evidence tended to show that the stopping the operation of the factory was for the purpose of making needed repairs and alterations, which made such stoppage necessary.   The

evidence upon the question, whether what was done in that behalf did in fact increase the risk, was conflicting, but the evidence tending to show the purpose of the suspension to have been within the intention of the clause last above quoted, was without any substantial conflict. Hence the finding of the trial Judge, sitting in the place of a jury, must be taken by this court to be conclusive upon those questions of fact. That is a complete answer to the position of counsel as to the alleged forfeiture of the policy, under the first special condition.

The second is, that if the assured should allow the building covered by the insurance to become vacant and unoccupied, the policy should thereupon become void.

The short answer to the contention of counsel for defendant, under that head, is, that their position is taken against the very truth of the uncontroverted testimony. The building was not at any time during the period in question vacant or unoccupied. This matter is so plain and clear upon the evidence as not to justify discussion, when we have so much in other cases that demands discussion and exhaustion of time and strength.

The third condition is in effect that if the property insured be a manufacturing establishment and it shall cease to be operated without special agreement indorsed on the policy, all insurance by this policy shall therefore cease.

The answer to the position of defendant's counsel that the stoppage of the operation of the factory, as shown by the evidence, constituted a breach of that condition and worked a forfeiture of the policy, seems to us to be readily at hand without going into any analysis of the numerous cases cited by them. The facts of the case must govern its decision, when they distinguish it from the cases decided by other courts. The law arises upon the facts.

It is indisputable that the evidence tends to show that the suspension of the operation of the machinery of the factory was designed to be only temporary; that one, if not the principal purpose of it, was to repair machinery and make alterations. The trial judge having found for the plaintiff on all the issues, we must, therefore, presume that he found those

facts in accordance with the tendency of the evidence to prove them. So that here we must take them as the facts. That being so, what is there left of counsel's position that such stoppage or suspension constituted a breach of the condition of the policy under consideration? The policy gave express permission to make such repairs and alterations without prejudice to any rights under such policy. A temporary stoppage or suspension of the operation of the machinery, and while making such repairs and alterations, was such a natural and necessary incident of the exercise of the privilege granted, that it must have been within the contemplation of the parties at the time of entering into the contract. Such stoppage or suspension was therefore authorized by the policy to be effected without prejudice to any rights of the assured thereunder.

We think the judgment in this case was supported by the evidence that there was no prejudicial error of law. So that an affirmance is the proper result.

*Judgment affirmed.*